IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD MURPHY, et al.          *

          Plaintiffs     *

          vs.             *   CIVIL ACTION NO. MJG-12-1533

ANNE ARUNDEL COUNTY, MD,       *
et al.
          Defendants     *

*     *     *     *     *     *     *     *     *

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it the Motion to Dismiss filed by

Defendants Anne Arundel County, Maryland and Detective Clarence

Cornwell [Document 5], and the materials submitted relating

thereto.   The Court finds a hearing unnecessary.


I.   BACKGROUND[1]

The instant case grows out of the fact that an innocent man

named Christopher Gale ("GALE") was wrongly identified as having

committed a shooting actually perpetrated by a man named

Christopher Gayle ("GAYLE").   Consequently, the police obtained

a warrant to search GALE and a home with which GALE was

connected ("the Murphy home").

On March 29, 2011, GAYLE shot Ricky Ernest Johnson, Jr.

("Johnson") in the presence of Jerome Herbert ("Herbert") at

---

[1]   The "facts" stated herein are as alleged by Plaintiffs and
not necessarily agreed upon by Defendants.

Marley Station Mall in Anne Arundel County, Maryland.  Detective
Clarence Cornwell ("Detective Cornwell") investigated the
shooting.

At the onset of the investigation, police dispatch advised
that a gray Honda was seen leaving the scene of the shooting.
Also the affidavit at issue states that "A short time later
[after a lookout was given for the gray Honda] a silver colored
Honda was seen [by someone not specified] traveling at a high
rate of speed in excess of 100 mph on router (sic) 32 near the
Anne Arundel County – Howard County line."[2]  A map check reveals
that the closest location on Route 32 near the said County line
would be in excess of about 15 miles from Marley Station Mall.

On March 30, 2011, a detective from another unit informed
Detective Cornwell that a confidential informant had provided
information that "Christopher Gale [spelled as in Cornwell's
report]; a black male was the driver of the vehicle that was
involved in the shooting."  Compl. ¶ 9.  Further investigation
revealed that GALE (not GAYLE) had been stopped by police on
February 20, 2009, driving a silver Honda with the license plate
2DHZ97 (emphasis added).  Motor Vehicle records showed this

---

[2]     The warrant application and affidavit are attached to the
Complaint and, therefore, proper for consideration on a 12(b)(6)
motion.  See Sec'y of State For Def. v. Trimble Navigation Ltd.,
484 F.3d 700, 705 (4th Cir. 2007) (explaining that in reviewing
a motion under Rule 12(b)(6), a court "may consider documents
attached to the complaint").

vehicle was registered to Erin Murphy of 18019 Shaffers Mill
Road, Mount Airy, Howard County, Maryland (the "Murphy home").

According to Detective Cornwell's report, on March 31,
2011, Sergeant Wells of the Northern District of the Anne
Arundel County Police Department ("Sgt. Wells") received a tip
from an anonymous caller stating that a car with tag number
2D<u>G</u>Z97 (emphasis added) was involved in the shooting at Marley
Station (the "Second Tip").  On April 4, 2011, police observed
Erin Murphy's silver Honda bearing the tag number 2D<u>H</u>Z97 in the
driveway of the Murphy home.  The police also verified that both
Erin Murphy and GALE used the Murphy home address when
registering for classes at Howard County Community College that
year.

On April 7, 2011, Detective Cornwell met with Johnson and
showed him a photographic line-up that included GALE's (not
GAYLE's) photograph.  Johnson did not identify GALE as the
shooter and stated "he didn't think the shooter was in the line-
up."  Compl. ¶ 12.  On that same date, Detective Cornwell
interviewed Herbert who identified the shooter as "Chris Gale"
(meaning GAYLE) and confirmed the shooter left the scene of the
crime in a "little darker than the champagne colored Honda."
<u>Id.</u> at 15.  Herbert also stated he knew the shooter because they
attended high school together and were recently reacquainted.
However, when shown the same photographic line-up as that shown

3

to Johnson, Herbert stated "Chris Gale [GAYLE] is not in there." Id. ¶ 13.

On April 8, 2011, Detective Cornwell swore out an affidavit in support of his application for a search and seizure warrant to search GALE and the Murphy home.[3]  Although the affidavit recounted part of Detective Cornwell's interview with Herbert, the affidavit omitted the failure of Herbert and Johnson to identify GALE in the photographic line-up and that Herbert stated he knew the shooter from high school.  Additionally, Cornwell recounted in his affidavit the Second Tip regarding the license plate and declared "[t]here is only a one character difference between information received from this anonymous tip and Murphy's silver Honda."  Police later determined that the license plate on the Honda actually driven by GAYLE on the night of the shooting was 7FSF44.  The tag number on Erin Murphy's Honda, 2DHZ97, shares no characters in common with the tag number on the Honda involved in the shooting.

On April 11, 2011, based on Cornwell's affidavit, a judge issued a no-knock search warrant for the Murphy home. Later that night, the Howard County SWAT team executed the search warrant. At the time of execution, Plaintiffs Donald Murphy, Bonnie Murphy, Erin Murphy, and Jill Murphy were asleep in the Murphy

---

[3]     GALE is not a Plaintiff in the present action.

home.  During the search, the Plaintiffs were handcuffed and questioned in their home by the SWAT team.  Thereafter, the police arrested GALE, but released him and dropped all charges hours later.

Detective Cornwell then identified GAYLE as the proper suspect and obtained a warrant for his arrest on April 12, 2011.

Plaintiffs, members of the Murphy family who were present when the police executed the search warrant, filed the instant suit against Anne Arundel County, Maryland (the "County"), Detective Cornwell, and other unknown officers yet to be named in the Circuit Court for Howard County.  The Defendants removed the case to this court pursuant to Federal Rule of Civil Procedure 81(c) and 28 U.S.C. § 1441, et seq. [Document 1].[4]  The Complaint presents claims in two Counts:

> Count 1- 42 U.S.C. Section 1983- Unreasonable Search and Seizure and Due Process of Law

> Count 2- Maryland Constitutional Violation (Articles 24 and 26 of the Maryland Constitution)

By the instant Motion, the County and Detective Cornwell seek dismissal of all claims pending against them pursuant to Rule 12(b)(6).

---

[4]   All "Rule" references herein are to the Federal Rules of Civil Procedure.

II. DISMISSAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice.  Id.  A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id. (quoting Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks
omitted).

III. DISCUSSION

Plaintiffs allege that Detective Cornwell knowingly or
recklessly submitted a warrant affidavit containing material
false information and omissions in support of the search warrant
executed upon Plaintiffs' property in violation of Plaintiffs'
rights under the Fourth and Fourteenth Amendments of the Federal
Constitution and Articles 24 and 26 of the Maryland Declaration
of Rights.  Defendants contend that the Complaint does not
allege facts sufficient to support a plausible claim that a
constitutional violation occurred and also contend that
Detective Cornwell is entitled to qualified immunity.

A.   Constitutional Violation

1.   Legal Principles

Title 42 U.S.C. § 1983 prohibits a person acting under the
color of law from depriving another of "any rights, privileges,
or immunities secured by the Constitution and laws."  The Fourth
Amendment, applicable to the States through the Fourteenth
Amendment, see Mapp v. Ohio, 367 U.S. 643, 654-55 (1961),
protects individuals from unreasonable searches and seizures

conducted by law enforcement.[5]  U.S. Const. amend. IV.  A search

or seizure effected without probable cause or upon a warrant

unsupported by probable cause is unreasonable and actionable

under § 1983.  See Brooks v. City of Winston-Salem, 85 F.3d 178,

183-84 (4th Cir. 1996).  A facially sufficient warrant will be

considered unsupported by probable cause when a law enforcement

agent submits a dishonest warrant affidavit to the issuing

judicial officer and the party challenging the validity of the

warrant can satisfy the two-part test outlined in Franks v.

Delaware, 438 U.S. 154 (1978).

    A warrant is considered unsupported by probable cause due

to a dishonest affidavit if (1) the affiant "deliberately or

with a reckless disregard for the truth" made a false statement

in his affidavit or "omitted from that affidavit material facts

with the intent to make, or with reckless disregard of whether

they thereby made, the affidavit misleading" and (2) the false

---

[5]    Like the Fourth Amendment, Articles 24 and 26 of the
Maryland Declaration of Rights protect persons against
unreasonable searches and seizures effected by law enforcement.
Md. Const. Decl. of Rts. art. 24, 26.  State constitutional
claims under Articles 24 and 26 of the Maryland Declaration of
Rights are construed in pari materia to Fourth Amendment claims.
See Pickett v. Sears, Roebuck & Co., 775 A.2d 1218, 1224 (Md.
2001).  As a result, the analysis for the Maryland Declaration
of Rights claim is identical to that for the Fourth Amendment of
the Federal Constitution.  Accordingly, the Court's Memorandum
will address the issue of constitutional violation without
distinction between the Maryland Declaration of Rights and the
Federal Constitution.

statements or omissions were material or "necessary to the neutral and disinterested magistrate's finding of probable cause."  <u>Miller v. Prince George's Cnty.</u>, 475 F.3d 621, 627-28 (4th Cir. 2007) (internal citations and quotations omitted). With respect to false statements, reckless disregard can be shown by evidence that the officer acted "with a high degree of awareness of a statement's probable falsity" or by establishing that "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."  <u>Id.</u>  Concerning omissions, a plaintiff can establish the requisite intent by showing the affiant "failed to inform the judicial officer of facts he knew would negate probable cause."  <u>Id.</u>  Allegations of negligence or innocent mistake by a law enforcement affiant do not provide the basis for a constitutional violation.  <u>Id.</u>

Further, false statements or omissions made by the affiant with the requisite intent will violate the Fourth Amendment only if the false statements or omissions are material or necessary to the finding of probable cause.  <u>Franks</u>, 438 U.S. at 155-56. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'"  <u>Miller</u> 475 F.3d at 628 (<u>quoting</u>

Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)).  If the
"corrected" warrant affidavit establishes probable cause, no
civil liability lies against the law enforcement affiant.

### 2.   Adequacy of the Complaint

The Plaintiffs' allege that Detective Cornwell deliberately
or with reckless disregard (1) falsely stated that police had
received the Second Tip regarding the tag number, (2) omitted
the fact that Johnson and Herbert, when shown a photographic
line-up including GALE, did not identify GALE as the shooter,
and (3) omitted the fact that Herbert represented he knew the
shooter from high school.

### a.   Intent

#### i.   False Statements

Plaintiffs' assert that Detective Cornwell fabricated the
Second Tip and thus knowingly or deliberately included false
information in his affidavit.[6]  The tag number provided in the

---

[6]    In the Complaint, the Plaintiffs do not expressly state
Detective Cornwell, as opposed to another police officer, made-
up the Second Tip, but allege "[t]here was no such tip, and
there could not possibly have been such a tip.  It had to be
created or concocted so that Cornw[e]ll could link [GALE], and
thus the Murphy family, to the crime so that search warrants
could be issued from the Murphy home and Erin Murphy's car."
Compl. ¶ 15.  In the Opposition, Plaintiffs contend explicitly
that Detective Cornwell concocted the Second Tip.  Pls.' Opp'n
[Document 13], at 3-4.  While limiting the analysis to the
Complaint above, the Court finds the factual allegations
sufficient to present a plausible claim that Detective Cornwell
participated in the chain of events leading to the false

Second Tip has no characters in common with the tag number on the Honda actually driven by GAYLE on the night of the shooting, but is coincidently similar to the tag number on the car (Erin Murphy's Honda) in which GALE had received a ticket.  It is at least plausible that a police officer investigating GALE would find the traffic offense, note the similarity of the GALE vehicle with the type of car reportedly driven by the shooter, and then "supplement" the tipster's information with a tag number almost identical to the GALE vehicle.

The Defendants do not assert that the Complaint fails to allege a plausible claim that the Second Tip was fabricated. Rather, Defendants contend Plaintiffs failed to plead facts sufficient to show Detective Cornwell knew or had reason to know the Second Tip, relayed to him by Sgt. Wells, was fake.  The Court does not agree.  The allegations are sufficient to present a plausible claim that Cornwell participated in, or knew of, the falsity of the Second Tip.  It may well be that the evidence will fail to establish this.  Indeed, Defendants have presented an email that they contend supports this position.  However, on a Rule 12(b)(6) motion, the Court may not consider documents attached to a dismissal motion without converting the motion into one for summary judgment unless such extrinsic evidence was

statement in the affidavit.  Put plainly, the tag number "coincidence" fails "the smell test."

"integral to and explicitly relied on in the complaint" and the
plaintiff does not challenge its authenticity.  Am. Chiropractic
Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir.
2004) (internal quotations and citations omitted) (emphasis
added).  The Court will not convert the instant motion to one
for summary judgment, and notes that Plaintiffs have had no
opportunity for discovery that may well present the existence of
genuine issues of material fact.


                    ii.  Omissions

     The Defendants' contend the Complaint fails to allege facts
sufficient to state a plausible claim that Detective Cornwell
acted with the requisite intent when he omitted information
regarding the photographic line-ups from his affidavit because
police officers are not required to include every piece of
potentially exculpatory evidence in a warrant affidavit.

      As recognized by the Supreme Court, affidavits are
"normally drafted by nonlawyers in the midst and haste of a
criminal investigation" and affiants "cannot be expected to
include in an affidavit every piece of information gathered in
the course of an investigation."  United States v. Ventresca,
380 U.S. 102, 108 (1965); United States v. Colkley, 899 F.2d
297, 300 (4th Cir. 1990).  In accordance with this principle,
the Fourth Circuit has confirmed that the Fourth Amendment does

                            12

not require an affiant to include all potentially exculpatory
evidence in an affidavit because such a mandate would in essence
import the due process requirements of <u>Brady</u> into the Fourth
Amendment and impose undue burdens on law enforcement officers
seeking warrants.  <u>See Colkley</u>, 899 F.2d at 301-02 (noting "the
affirmative inclusion of false information in an affidavit is
more likely to present a question of impermissible official
conduct than a failure to include a matter that might be
construed as exculpatory").

Although a law enforcement officer need not include <u>all</u>
exculpatory information in a warrant affidavit, he or she cannot
purposefully exclude information in order to mislead the party
responsible for evaluating whether the warrant affidavit
establishes probable cause.  <u>See Miller</u>, 475 F.3d at 632
(finding jury could conclude officer made misrepresentations and
omissions in arrest warrant affidavit with requisite intent
where evidence existed to support that warrant falsely stated
suspect was African American and witness provided plaintiff's
tag number to police); <u>Bearnarth v. Montgomery Cnty.</u>, DKC-09-
0501, 2011 WL 665325, at *8 (D. Md. Feb. 14, 2011).  Here,
Detective Cornwell omitted from his affidavit the fact that the
only two eyewitnesses to the shooting known at the time, Herbert
(who said he knew the shooter from high school) and Johnson,
failed to identify GALE as the shooter in the photographic line-

13

up.  The omission is particularly significant because Detective
Cornwell included in his affidavit the fact that Herbert, who
witnessed the shooting at close range, identified the shooter as
a "Chris Gale" (spelling in affidavit).  The affidavit's
treatment of this information is sufficient to create a
plausible claim that the omission was designed to mislead the
judge.

The Defendants contend that Detective Cornwell omitted the
photographic line-up information because he "did not place much
stock in Johnson's and Herbert's failure to identify" GALE
"because he suspected that Johnson and Herbert simply did not
want to get involved in the criminal proceedings."  This
contention is hardly irrefutable.  Indeed, Herbert's conduct was
hardly indicative of a person who did not want to get involved
with a criminal proceeding.  Herbert made himself a key
prosecution witness by identifying the shooter as a person he
knew from high school and with whom he had recently become
reacquainted.   Of course, the defense can choose to present
this contention for the evaluation of the trier of fact.
However, the issue now presented is not whether the Defendants
can present a plausible innocent excuse for the omission.

At the dismissal stage, the Court must assume all of the
factual allegations in the Complaint to be true, must resolve

all doubts and inferences in favor of the Plaintiffs, and must
view the allegations in a light most favorable to the
Plaintiffs.   See Edwards v. City of Goldsboro, 178 F.3d 231,
243-44 (4th Cir. 1999).

The Court is cognizant that "imposition of broad liability
for omissions in warrant applications would paralyze law
enforcement by requiring that a warrant application contain a
complete, voluminous recitation of every fact known to the
police which would be exculpatory, rather than a simple
statement of facts establishing probable clause." Smith v.
Reddy, 882 F. Supp. 497, 501 (D. Md. 1995) aff'd, 101 F.3d 351
(4th Cir. 1996) (granting summary judgment to police officer on
qualified immunity grounds where officer omitted from arrest
warrant affidavit information as to witness's intoxication and
plaintiff's age and criminal history).   However, the Court finds
the Complaint contains allegation and facts sufficient to state
a plausible claim that Detective Cornwell omitted information
regarding the photographic line-ups from his affidavit with the
intent to make, or with reckless disregard of whether such
omissions thereby made, his affidavit misleading.

b.   <u>Materiality</u>

The Court has determined that the Complaint contains facts sufficient to state a plausible claim that the alleged misstatements and omissions in the affidavit were made by Detective Cornwell with the requisite intent.  Of course, no viable constitutional violation will lie unless these misstatements and omissions were material, or necessary, for a finding of probable cause to search the Murphy home.[7]  <u>Miller</u>, 475 F.3d at 628.

---

[7]   There is authority in the Fourth Circuit supporting the proposition that the <u>ultimate</u> question of materiality in a Section 1983 dishonest warrant affidavit context is a question of law to be determined by the court, though questions of fact may exist as to the nature of the omitted information to be included in a "cleansed" affidavit.  <u>See</u> <u>Smith v. Reddy</u>, 882 F. Supp. 497, 500 (D. Md. 1995) <u>aff'd,</u> 101 F.3d 351 (4th Cir. 1996) (explaining materiality "is ultimately a question of law "); <u>Bearnarth v. Montgomery Cnty.</u>, DKC-09-0501, 2011 WL 665325, at *7 (D. Md. Feb. 14, 2011) (explaining the court does not rely on the testimony of the judicial officer who issued a warrant as proof of probable cause, but makes its own determination by examining the corrected affidavit).  Some circuits consider the existence of probable cause in the context of a Section 1983 claim to generally be a question of fact.  <u>See</u> <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997) (explaining in dishonest affidavit case that "[t]ypically, the existence of probable cause in a section 1983 action is a question of fact . . . The district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding")(internal citations omitted); <u>see also</u> <u>Gregory v. City of Louisville</u>, 444 F.3d 725, 743 (6th Cir. 2006) ("In a § 1983 action, the existence of probable cause is a question of fact.").

If the affidavit had been "cleansed", it would have provided, in brief, that on March 29, 2011, Johnson was shot during a drug transaction.  A Honda, said by a dispatcher to be gray, was seen leaving the scene of the shooting.  A short time later, a "silver colored" Honda was seen by someone traveling at 100 miles per hour near the county line.[8]  On March 30, 2011, another police officer got a confidential tip that a black male named "Christopher Gale" (spelling in affidavit) was the shooter.  Further investigation revealed that some two years before the shooting a person named Christopher Gale had been driving a silver Honda, with tag number 2DHZ97, registered to Erin Murphy and was subject to a traffic stop.  This silver Honda has been observed in the driveway of a home owned by Erin Murphy (presumably recently).  On April 7, 2011, a detective spoke with Jerome Herbert, an eyewitness who identified the shooter as a person named "Chris Gale" (affidavit spelling) whom he knew from high school and whom he had been recently reacquainted.  Herbert said he saw the shooter leave the scene in a Honda a little darker than champagne colored.  Both

---

[8]   Although not explicitly stated in Cornwell's affidavit, a map check reveals that the "silver colored" Honda was sighted approximately 15 or more miles from the scene of the shooting. Presumably, the reviewing judicial officer, a judge of the District Court for Anne Arundel County, would have appreciated the distance between the scene of the shooting (a mall) and the "silver colored" Honda sighting later that evening (referenced as Route 32 near the Anne Arundel County-Howard County line).

Herbert and the victim Johnson were shown a photographic line-up
that included a photograph of the Christopher Gale who was in
the 2009 traffic stop.  Both Herbert and Johnson stated that the
shooter was not in the photographic line-up; hence that GALE's
photo was not that of the shooter.

To determine whether an affidavit would be supported by
probable cause, the "totality of the circumstances" test
outlined in Illinois v. Gates, 462 U.S. 213 (1983), is applied.
The test requires "a practical, common-sense decision whether,
given all the circumstances set forth in the affidavit . . .
there is a fair probability that contraband or evidence of a
crime will be found in a particular place."  462 U.S. at 238.
"[P]robable cause is a fluid concept-turning on the assessment
of probabilities in the particular factual contexts - not
readily, or even usefully, reduced to a neat set of legal
rules."  Id. at 232.  In connection with a search warrant, "the
nexus between the place to be searched and the items to be
seized may be established by the nature of the item and the
normal inferences of where one would likely keep such evidence."
United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

The Court finds that a judge, presented with the affidavit
"cleansed" of the false statement and omissions as sufficiently
alleged in the Complaint, would not have found probable cause to
have issued a warrant, much less a no knock warrant, to search

18

the Murphy home and GALE.  Indeed, a reviewing judge would certainly find it relevant to inquire of the affiant whether he had asked the witnesses to provide any physical description of the person identified by the witnesses as the shooter other than a black male so that there could be a comparison with the physical description of the Christopher Gale whose photo was included in the line-up.  Also, in view of the express exclusion of the Christopher Gale whose photo was shown to the witnesses, a judge would likely have asked whether the affiant had investigated the possible existence of more than one person with the same name (or a name that sounded the same and was spelled differently) through records, including drivers licenses.

Accordingly, assuming the factual allegations in the Complaint to be true, the Complaint states a plausible claim that the subject misstatements and omissions were material.


B.   Qualified Immunity

Defendants assert the Complaint is subject to dismissal because Detective Cornwell is entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  For a constitutional right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted).

As discussed above, the Court finds the Complaint states a plausible claim that Detective Cornwell's conduct violated Plaintiffs' Fourth Amendment rights.  The Fourth Circuit has held it is clearly established that the Federal Constitution does "not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause."  Miller, 475 F.3d at 632.  Accordingly, Defendants' affirmative defense of qualified immunity does not provide a basis to dismiss the Complaint pursuant to Rule 12(b)(6).

IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendants Anne Arundel County, Maryland's and Detective Cornwell's Motion to Dismiss [Document 5] is DENIED.

2.   Plaintiffs shall arrange a telephone conference call to be held by November 20, 2012, to discuss the scheduling of further proceedings herein.

SO ORDERED, on <u>Wednesday, November 7, 2012.</u>


<u>        /s/         </u>
Marvin J. Garbis
United States District Judge